```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
_____
                               :
IKE EURE,                      :   CIVIL ACTION
            Petitioner,        :
                               :   NO. 08-1651
      v.                       :
                               :
DAVID DIGUGLIELMO, et al.,     :
            Respondents.       :
_____:
```

HENRY S. PERKIN
United States Magistrate Judge

**REPORT AND RECOMMENDATION**

Before the Court is the <u>pro se</u> Petition for Writ of Habeas Corpus filed by the Petitioner, Ike Eure ("Petitioner"). Petitioner is currently incarcerated in the State Correctional Institution in Graterford, Pennsylvania. For the reasons that follow, it is recommended that the Petition should be denied without prejudice and dismissed without an evidentiary hearing.

**I.    PROCEDURAL HISTORY.[1]**

Petitioner waived his right to a jury trial and was convicted of first degree murder and possessing an instrument of crime ("PIC") following a bench trial held by the Honorable Pamela Pryor Dembe of the Court of Common Pleas of Philadelphia County on August 31, 2000.[2] Because the Commonwealth did not

---

[1]This information is taken from the Petition, the Response, and all the attachments to those documents.

[2]The facts of this case, as related by the Superior Court on direct appeal from the judgment of sentence, are as follows:

seek the death penalty, he received a sentence of life imprisonment on the date he was convicted.  Post-trial motions were filed on September 8, 2000, and were denied following argument on October 31, 2000.

On November 15, 2000, trial counsel perfected a direct appeal to the Pennsylvania Superior Court.  Trial counsel did not file a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) ("1925(b)

---

> Eure was charged with committing a brutally savage attack on his roommate which resulted in his death.  The victim sustained fifteen stab wounds, some of which penetrated the chest, severed the heart, pierced the skull and bruised the brain.  The victim also sustained various incised wounds that indicated he attempted to ward off the Eure's [sic] assault.  The police investigating the attack found cleanser, a dustpan, and a broom that had been used to clean up the crime scene.  Officers also found a jacket owned by Eure that had human bloodstains on it.
> At trial, one of the victim's friends testified that a few days before the attack the victim had told him that he had spoken with Eure and told him that their living arrangements were not working out.  Specifically, the victim informed his friend that Eure was lazy and had personal hygiene problems.  The victim said that Eure agreed to move out before the end of the month if he would be refunded one-half of the rent money.  The victim agreed to this plan.
> One of Eure's friends also testified that Eure had visited him twice during the days following the murder and told him that the victim had attacked him with a knife, and that during the struggle, the victim "fell on the knife."  Eure was later apprehended by police.  When approached by the arresting officer, Eure abruptly turned and began walking quickly in the opposite direction.  He also gave an alias when asked for his name.

Resp., Ex. D, pp. 1-2.

statement"). Trial counsel instead filed a motion in the Superior Court to withdraw from the case and have new counsel appointed for appeal. The motion was granted and appellate counsel was appointed on January 11, 2001. Appointed appellate counsel filed a motion in the Superior Court for remand to the trial court to allow him to file his 1925(b) statement. On April 17, 2001, the motion was granted and the case was remanded for counsel to file a 1925(b) statement, and the trial judge was directed to file a supplemental opinion. Counsel filed the 1925(b) statement on May 1, 2001. The trial court issued an opinion for consideration by the appellate court on May 18, 2001. On June 24, 2002, the Superior Court, in an unpublished opinion, rejected the majority of petitioner's claims on direct appeal as meritless, but remanded for an evidentiary hearing on two ineffective assistance of trial counsel claims. Resp., Ex. D; <u>Commonwealth v. Eure</u>, No. 3208 EDA 2000 (Pa. Super. June 24, 2002).

      The trial court conducted an evidentiary hearing on the two remanded ineffectiveness claims on January 28, 2003. Resp., Ex. E. The witnesses who testified included one of petitioner's trial attorneys, Helen Levin, Esquire, and Assistant Medical Examiner Bennett Preston. <u>Id.</u> The trial court issued its opinion on March 12, 2003, denying Petitioner relief because "there is nothing to support the claims of ineffective assistance

of counsel."  Resp., Ex. F, p. 6.

Petitioner again appealed to the Superior Court, which affirmed the trial court's rejection of his ineffectiveness claims on March 30, 2004.  Resp., Ex. G; Commonwealth v. Eure, 850 A.2d 6 (Pa. Super. 2004)(table).  Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied on September 9, 2004.  Resp., Ex. H; Commonwealth v. Eure, 859 A.2d 767 (Pa. 2004)(table).

On November 20, 2004, Petitioner filed a pro se petition pursuant to the Pennsylvania Post-conviction Relief Act ("PCRA").  42 Pa. C.S.A. § 8541, et seq.  Counsel was appointed and filed an amended PCRA petition on June 20, 2005, and a supplemental amended PCRA petition on December 14, 2005.  Resp., Ex. I.  Petitioner alleged in the petition that his appellate counsel was ineffective for not seeking Pennsylvania Supreme Court review following the Superior Court's June 24, 2002 decision.  Resp., Ex. I, at 3.  In his supplemental amended petition, however, Petitioner conceded that counsel could not have sought allocatur until the Superior Court issued its March 30, 2004 decision, but Petitioner nonetheless asserted that he was entitled to PCRA relief in the form of permission to seek allowance of appeal to the Pennsylvania Supreme Court as to the issues for which the Pennsylvania Superior Court denied relief in its June 24, 2002 decision.  Resp., Ex. I, at 2.  On February 13,

2006, the PCRA court issued a notice of intention to dismiss the PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907 for lack of merit.  Resp., Ex. J.  On March 27, 2006, the PCRA court dismissed the PCRA petition.  Resp., Ex A.

Petitioner filed a timely appeal with the Pennsylvania Superior Court.  Resp., Ex. K.  On June 13, 2006, while the appeal was pending, the PCRA court issued an order stating that its denial of petitioner's request for permission to seek allocatur from the Superior Court's decision on June 24, 2002 had been in error.  Resp., Ex. L.  On May 20, 2007, therefore, the Superior Court vacated the appeal and remanded the case to the PCRA court to enable the PCRA court to enter an order allowing petitioner to file a petition for allowance of appeal *nunc pro tunc* for his direct appeal from the Superior Court's June 24, 2002 decision.  Resp., Exs. K, M.  On August 5, 2007, the PCRA court issued an order granting petitioner leave to seek allocatur *nunc pro tunc*.  On June 28, 2007, petitioner filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which denied further review on December 10, 2007.  Resp., Exs. N, O; Commonwealth v. Eure, 938 A.2d 1051 (Pa. 2007).  Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.

Petitioner, acting pro se, signed the instant Petition

5

for Writ of Habeas Corpus on April 1, 2008.  The Petition was docketed with the Clerk's Office on April 7, 2008, and this case was referred to the undersigned by the Honorable Paul S. Diamond for preparation of a Report and Recommendation on April 15, 2008. On April 22, 2008, the District Attorney's Office for Philadelphia County was ordered to respond to the Petition by June 6, 2008.  An extension of time was granted on June 4, 2008, extending the time to file the Response until July 7, 2008.  The Response was filed on July 7, 2008.  Respondents contend that the Petition should be dismissed without prejudice because it contains several claims which are unexhausted at the state court level.  They contend that Petitioner should first exhaust those claims and then come back to this Court for any further relief he seeks.

**II.** **DISCUSSION**.

Petitioner must first exhaust his remedies in the state court system before bringing claims to this Court. Petitioner presents the following claims in the instant Petition: (1)(a) trial counsel was ineffective in some unspecified manner as supposedly demonstrated by Exhibit A to the petition, where Exhibit A is a letter from appellate counsel to Petitioner; (1)(b) that "counsel was ineffective on issues of PCRA as noted in Exhibit [B] [and] C," where Exhibit B to the petition is the trial court's supplemental opinion filed on May 18, 2001 and

where Exhibit C is a letter dated September 12, 2000 to the trial court from trial counsel enclosing a courtesy copy of Petitioner's post-sentence motion; and (1)(c) an unspecified "conflict of interest was shown" somehow "on all appeals" (Petition ¶ 12(A), at 9); (2) the prosecutor committed misconduct by presenting the allegedly false testimony of Police Officer Christopher Grandison, who stated that he observed no injuries on Petitioner when he was arrested (id. ¶ 12(B), at 9); (3) the prosecutor supposedly withheld "vital photographic evidence" from the trial judge, thereby "leading [the court] to beli[e]ve that there [were] no injuries" on Petitioner (id. ¶ 12(C), at 9); and (4) the prosecutor committed "misconduct and misrepresentation of character evidence" by supposedly "usurp[ing] and "circumvent[ing] rules and laws in order to obtain [a] conviction" (id. ¶ 12(D), at 9-10).  In a supplementary document captioned "Response" and docketed on June 13, 2008, Petitioner asserted four additional claims: (1) trial counsel supposedly "admitted that tactics of intimidation by [the] district attorney" supposedly "render[ed] [counsel] ineffective"; (2) his "request for [a] trial by jury and to testify . . . was denied by counsel on the bas[i]s he knew [the] judge"; (3) "the court and counsel denied Petitioner his constitutional right to be at every phase of tria[l] by several judge chambers discussion [sic]"; and (4) Petitioner was "out on bail because [the] preliminary hearing

judge beli[e]ved that this was [an] issue of self[-]defense." ("Supplemental Petition" at 1-2.)

Respondents contend that this Petition should be dismissed without prejudice as a mixed petition pursuant to Rose v. Lundy, 455 U.S. 509 (1982), because several of the claims have not been properly presented to the state courts.  Respondents have examined the claims in the instant Petition and tracked whether they have been exhausted at the state court level. Unexhausted claims include Petitioner's claim that the prosecutor committed misconduct by presenting the allegedly false testimony of Police Officer Grandison regarding Petitioner's lack of injuries when arrested (Pet., ¶ 12(B), at 9) and by supposedly withholding "vital photographic evidence" from the trial judge, thereby "leading [the court] to beli[e]ve that there [were] no injuries" on Petitioner (id. ¶ 12(C), at 9).  Although Petitioner asserted in his pro se PCRA petition the misconduct claim predicated on the police officer's supposedly false testimony (PCRA Pet., Ex. I, ¶ 5(A), at 3), PCRA counsel did not include this claim in the amended petition because counsel concluded that the claim lacked merit (Am. PCRA Pet., Ex. I, at 12-13).  Because the claims were not submitted to the Superior Court, the claim was not addressed in its decisions.  Thus, the claims are not exhausted.

Direct review of Petitioner's judgments of sentence

8

concluded on March 10, 2008, upon the expiration of the ninety-day period for seeking United States Supreme Court review following the Pennsylvania Supreme Court's denial on December 10, 2007 of discretionary review of his direct appeal. See Supreme Ct. R. 13(1)(petitioner has ninety days to file petition for certiorari); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999) (judgment of sentence final after expiration of ninety-day period for seeking United States Supreme Court review). Petitioner therefore has one year from March 10, 2008 to file a timely PCRA petition.

Under certain circumstances, particularly when the petition is considered mixed because it contains both exhausted and unexhausted claims, the United States Supreme Court has held that "it is appropriate to stay and abey the federal habeas proceedings while the petitioner exhausts his unexhausted claims in state courts." Rhines v. Weber, 544 U.S. 269, 277-278 (2005). The Court specifically stated that the court should stay, rather than dismiss, a petition when a petitioner exhibits "reasonable confusion about whether a state filing would be timely" and thereby shows "good cause" for filing in federal court. Pace v. DiGuglielmo, 544 U.S. 408, 416-417 (2005). The Supreme Court set forth the following test, "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner

engaged in dilatory tactics" then the district court "should stay, rather than dismiss, the mixed petition." Rhines, 544 U.S. at 269.

In the event that a district court determines that a petitioner should be permitted to file his application for state post-conviction relief, the United States Court of Appeals for the Third Circuit has provided that thirty days is a reasonable length of time to permit the filing of the PCRA petition, and that petitioner should be given another reasonable interval of thirty days after the denial of PCRA relief to return to federal court. Crews v. Horn, 360 F.3d 146 (3d Cir. 2004). In the event that a petitioner fails to meet either time limit, however, the stay should be vacated nunc pro tunc. Id. at 154.[3]

If the instant Petition were denied without prejudice for Petitioner to exhaust his state court remedies with respect to the unexhausted claims, the exhausted claims may later be deemed procedurally defaulted and unreviewable in this Court. Although Petitioner has not exhibited any "reasonable confusion about whether a state filing would be timely," in order to show

---

[3] Although Crews was decided prior to the Supreme Court's decision in Rhines, which approved but limited the availability of the stay and abeyance procedure, Crews is consistent with Rhines in determining that such a stay should be conditioned on the petitioner returning to federal court within a reasonable time after exhaustion. Bowen v. Palakovich, No.CIV.A. 06-3378, 2007 WL 1056821, at *1 n.2 (E.D. Pa. Apr. 4, 2007)(quotations and citations omitted).

"good cause" for staying the instant Petition, there is no indication under the facts of this case that Petitioner is engaging in dilatory litigation tactics.  To the contrary, it appears that Petitioner filed the instant Petition out of an abundance of caution in order to meet his AEDPA deadlines.  Moreover, it is not clear that the unexhausted claims in the instant Petition are plainly meritless.

Several of Petitioner's claims are difficult to discern and, as Respondents note, would profit from greater clarity.  See Pet. ¶ 12(A), at 9 (asserting claims supposedly proven by Exhibits A, B, and C to petition and claiming that "conflict of interest was shown" somehow "on all appeals"); id. ¶ 12(D), at 9-10 (asserting that prosecutor committed "misconduct and misrepresentation of character evidence" by supposedly "usurp[ing] and "circumvent[ing] rules and laws in order to obtain [a] conviction").  Several of the claims asserted in his supplemental petition ("Response") docketed on June 13, 2008 are also too vague to state a basis for relief, e.g., that trial counsel supposedly "admitted that tactics of intimidation by [the] district attorney . . . render[ed] [counsel] ineffective." (Supp. Pet. at 1.)  Although the supplemental petition also appears to refer to claims that were properly presented in state court — such as his ineffectiveness claims arising out of his decision not to testify, the in-chambers disposition of his

hearsay challenge, and his sufficiency claim — those claims would benefit from further articulation. (Id. at 1-2.)  Petitioner should therefore amend the instant Petition in order to clarify these claims.

Petitioner should also file a PCRA petition within thirty days of Judge Diamond's decision on this Report and Recommendation in order to exhaust his state remedies for those claims listed in this Report.  Petitioner should also be aware that if he does not seek state review in a timely manner, his unasserted claims will become procedurally defaulted and thus ineligible for federal habeas review.

In order to protect Petitioner's due process rights, it is respectfully recommended that the instant Petition should be stayed in order that Petitioner may exhaust his state court remedies regarding his unexhausted claims in the instant Petition.  Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this 23rd day of September, 2008, IT IS RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus should be held in abeyance pending Petitioner's exhaustion of claims in the Pennsylvania courts. Within thirty days of the conclusion of the state court proceedings, including any appellate proceedings related thereto, Petitioner should be ordered to notify the Court that those proceedings are concluded and the case is ready to proceed in this Court.

The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

 /s/ Henry S. Perkin
HENRY S. PERKIN
United States Magistrate Judge